

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 21, 2021**

_____

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 17-44248-ELM |
| SPECIALTY SELECT CARE CENTER | § | |
| OF SAN ANTONIO, LLC, | § | Chapter 7 |
| | § | |
| Debtor. | § | |
| | § | |
| SHAWN K. BROWN, Chapter 7 Trustee | § | |
| For Specialty Select Care Center of | § | |
| San Antonio, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 20-04060 |
| | § | |
| LLOYD DOUGLAS, Individually, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court for determination in this adversary proceeding is the *Defendants' Motion to Dismiss* [Docket No. 8] (the "**Motion**") filed by Defendants Lloyd Douglas, Individually ("**Douglas**"); Lloyd Douglas Enterprises, L.C. ("**Douglas Enterprises**"); Brownwood Care Center I, Ltd.; D-5 Development, LLC; Sunflower Park Holdings, LP; Whispering Pines Healthcare, L.C.;

Mt. Pleasant Operators, LLC; Specialty Select Care Center, LLC; Graham Investors Group, LLC; Kemp Investor Holdings, LLC; Kerens Care Center, Inc.; and River City Life Care, Inc. (all of the foregoing Defendants with the exception of Douglas and Douglas Enterprises, the "**Fee Owners**," and together with Douglas and Douglas Enterprises, the "**Defendants**") in response to the *Trustee's First Amended Complaint* [Docket No. 7] (the "**Complaint**") filed by Plaintiff Shawn K. Brown (the "**Trustee**"), in his capacity as the chapter 7 trustee for the bankruptcy estate of Specialty Select Care Center of San Antonio, LLC (the "**Debtor**"), the chapter 7 debtor. In support of the Motion, the Defendants have filed their *Brief in Support of Motion to Dismiss* [Docket No. 9] (the "**Defendants' Brief**") and *Appendix in Support of Defendants' Motion to Dismiss Complaint and Brief in Support Thereof* [Docket No. 10] (the "**Defendants' Appx.**").

In opposition to the Motion, the Trustee has filed his *Response to Defendants' Motion to Dismiss* [Docket No. 11] (the "**Response**"), *Brief in Response to Defendants' Motion to Dismiss* [Docket No. 12] (the "**Trustee's Brief**") and *Appendix in Support of Plaintiff's Response to Defendants' Motion to Dismiss and Brief in Support* [Docket No. 13] (the "**Trustee's Appx.**").

On December 15, 2020, the Court conducted a hearing on the Motion. Having now considered the Complaint, the Motion, the Defendants' Brief, the Defendants' Appx., the Response, the Trustee's Brief, the Trustee's Appx., and the arguments of counsel, the Court will grant the Motion in part, and deny the Motion in part, for the reasons set forth herein.

### *JURISDICTION*

1.     On October 20, 2017 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby initiating its bankruptcy case with this Court under Case No. 17-44248. The Trustee was appointed to serve as the chapter 7 trustee of the Debtor's bankruptcy estate.

2.      The Trustee initiated this adversary proceeding with the filing of his original complaint against the Defendants on August 14, 2020.  On September 3, 2020, the Trustee filed the current live Complaint.

3.      The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 and *Miscellaneous Order No. 33: Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* (N.D. Tex. Aug. 3, 1984).  Venue of the proceeding in the Northern District of Texas is proper under 28 U.S.C. § 1409.  The proceeding is both core and non-core in nature within the meaning of 28 U.S.C. § 157(b)(2).  Pursuant to 28 U.S.C. § 157(b)(1), the Court may enter a final order or judgment on all core claims.  Based upon the parties' consent to the Court's entry of a final order or judgment on all non-core claims and knowing and voluntary waiver of the right to the adjudication of such claims by an Article III court, the Court may also enter a final order or judgment on all non-core claims pursuant to 28 U.S.C. § 157(c)(2).[1]

## *FACTUAL BACKGROUND*[2]

### *A.      Relationship of the Defendants to the Debtor*

4.      Prior to the Petition Date, the Debtor was the operator of a 124-bed skilled nursing home known as Casa Rio Healthcare and Rehabilitation located in San Antonio, Texas ("**Casa Rio**").

5.      Casa Rio was part of a chain of ten skilled nursing homes (the "**Nursing Home Chain**") indirectly owned by Douglas and managed by Douglas Enterprises.  The organizational structure employed for the Nursing Home Chain was as follows: (a) each nursing home was owned

---

[1] *See* Docket Nos. 19 and 20 (parties' consents); *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674-85 (2015) (permitting final adjudication of non-core claims by bankruptcy court where there is a knowing, voluntary waiver of the right to adjudication by an Article III court).

[2] The factual background set forth herein is largely taken from the factual allegations of the Complaint which, for purposes of considering dismissal pursuant to Federal Rule 12(b)(6), are accepted as true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

by a separate entity – a fee owner; (b) each fee owner leased its nursing home to a separate operating entity – an operator; and (c) each operator contracted with Douglas Enterprises to obtain management services from Douglas Enterprises in connection with operating the nursing home.

6.      Each of the Defendant Fee Owners was a fee owner within the above-described organizational structure.  At all relevant times, Douglas both owned and controlled each of the Fee Owners and Douglas Enterprises.

**B.      The Casa Rio Lease**

7.      Specialty Select Care Center, LLC ("**Specialty Select**") was the Fee Owner that owned Casa Rio.

8.      Specialty Select leased Casa Rio to the Debtor under a lease, commencing November 1, 2010, having a 10-year base term (subject to the right to extend for up to an additional 10 years) and providing for monthly rent of $55,800 (subject to 1% per year annual rent increases after the initial 10-year term) (the "**Specialty Select Lease**").  *See* Defendants' Appx. 1-86.[3]

9.      In conjunction with consummating the sale of the Nursing Home Chain (discussed below), the Specialty Select Lease was terminated on July 30, 2015.  Prior to such termination, the Debtor made the monthly $55,800 payments to Specialty Select[4] (collectively, the "**Lease Payments**").

---

[3] While the Specialty Select Lease is not attached to the Complaint, because the Specialty Select Lease and its terms are referenced in multiple places throughout the Complaint and, thus, the Specialty Select Lease is central to the Trustee's claims, it is both permissible and appropriate for the Court to consider the Specialty Select Lease, itself, in connection with determining the Motion.  *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (explaining that while a court is ordinarily constrained to the operative pleadings in considering a motion to dismiss, "the court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim'") (quoting *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

[4] The Complaint alleges that the rent payments were made to "Kemp."  *See* Complaint, ¶ 23.  In context, however, it appears that the Trustee inadvertently referenced Kemp instead of Specialty Select.

10.     The Trustee asserts on information and belief that the level of rent provided for and paid by the Debtor under the Specialty Select Lease was above market value, and on further information and belief that Douglas and Douglas Enterprises intentionally set the rent above market level to limit the Debtor's overall profitability and minimize its cash reserves.

**C.     *The Casa Rio Management Agreement***

11.     Douglas Enterprises performed management services for Casa Rio under a Management Agreement with the Debtor dated September 1, 2011 (the "**Specialty Select Management Agreement**").

12.     In conjunction with consummating the sale of the Nursing Home Chain (discussed below), the Specialty Select Management Agreement was terminated effective July 30, 2015.  The Trustee believes that management fees consistent with the terms of the Specialty Select Management Agreement were paid to Douglas Enterprises until the time of the agreement's termination (collectively, the "**Management Fee Payments**").

13.     The Trustee asserts on information and belief that the management fees paid to Douglas Enterprises were above industry standard and did not represent fair market value for the services rendered, and on further information and belief that Douglas and Douglas Enterprises intentionally set the management fees under the Specialty Select Management Agreement above industry standard or fair market value to limit the Debtor's overall profitability and minimize its cash reserves.

**D.     *Insurance Coverage for the Nursing Home Chain***

14.     On or about December 21, 2010, Douglas formed two captive insurance companies to insure against the risks of the Nursing Home Chain.  Thereafter, on behalf of the Debtor, Douglas and Douglas Enterprises contracted with one of these companies – Brae Insurance

Company Limited ("**Brae**") – to obtain a Long Term Care Facility Liability Policy for the Debtor having limits of $250,000 per each medical incident and a general aggregate coverage limit of $750,000 (the "**Brae Insurance Policy**").

15.    The Trustee asserts on information and belief that at the time of the Debtor's acquisition of the Brae Insurance Policy, Douglas and Douglas Enterprises knew that the insurance coverage obtained thereby was wholly inadequate, thereby exposing the Debtor to potential risk, including for personal injury and wrongful death claims.  In fact, prior to the closing of the Nursing Home Chain sale (discussed below), incidents occurred at Casa Rio that led to the initiation of four different personal injury/wrongful death cases involving ten separate representatives of ten former Casa Rio residents (collectively, the "**Resident Injury Cases**").[5]  At the time of the incidents that led to the Resident Injury Cases, the Brae Insurance Policy was in effect.  In each case, however, Brae denied coverage of the claims.

16.    As of the Petition Date, the Resident Injury Cases remained pending.  Counsel for the plaintiffs in the Resident Injury Cases have asserted that the damages exceed $2.5 million.  On the Petition Date, the Debtor had only $28,727.05 in funds available to satisfy all allowed claims in the Bankruptcy Case, including those that are allowed in relation to the greater than $2.5 million in damages asserted in connection with the Resident Injury Cases.

**E.    *Sale of the Nursing Home Chain***

17.    On or about May 1, 2015, the Fee Owners, the operators (including the Debtor), and Douglas Enterprises entered into a Purchase and Sale Agreement with GruenePoint Acquisition I, LLC (including any permitted assignee, "**GruenePoint**"), for GruenePoint's purchase of the assets of the Nursing Home Chain for $130 million.

---

[5] *See* Complaint, ¶ 32 and Exh. A (listing the Resident Injury Cases).

18.    The sale closed on or about July 29, 2015.  In conjunction with the sale, the Debtor executed the following documents: (a) an Operations Transfer Agreement pursuant to which, among other things, the Debtor agreed to transfer all Inventory, Personal Property and Intangible Personal Property (as each of those terms is defined therein), to GruenePoint 1 Casa Rio, LLC ("**GruenePoint Casa Rio**"); (b) a Bill of Sale to evidence transfer of the Inventory, Personal Property and Intangible Personal Property to GruenePoint Casa Rio; (c) an Assignment and Assumption Agreement pursuant to which the Debtor transferred and assigned all Assumed Operating Contracts (as such term is defined therein) to GruenePoint Casa Rio, and pursuant to which GruenePoint Casa Rio accepted the assignment and assumed all obligations going forward; and (d) a Termination of Management Agreement pursuant to which the Specialty Select Management Agreement was terminated.

19.    According to the Debtor's 2015 Form 1065 U.S. Return for Partnership Income (the "**Original 2015 Return**"), the Debtor realized $5,089,672 in sales proceeds from the Nursing Home Chain sale (the "**Sales Proceeds**") with a net gain of $4,975,393.  Notwithstanding such reported figures, the Debtor received none of the Sales Proceeds.  Instead, all of the Sales Proceeds were allegedly transferred to Douglas, Douglas Enterprises, Specialty Select and/or other Fee Owners.

20.    Following the Petition Date, the Trustee reviewed the Original 2015 Return.  On or about July 17, 2020, after having been questioned about the tax filing, Douglas unilaterally and without Trustee approval filed an amended 2015 Form 1065 U.S. Return for Partnership Income on behalf of the Debtor to remove all references to the asset sale (the "**Amended 2015 Return**").

**F.**     *Transfers to Douglas*

21.     The Trustee asserts on information and belief that Douglas was the recipient of certain transfers from the Debtor within the four-year period immediately preceding the Petition Date.  The Trustee specifically asserts that Douglas was the recipient of eight different transfers made after the closing of the Nursing Home Chain sale, aggregating $301,643.75 (collectively, the "**Douglas Transfers**"), including a transfer of $19,860.39 allegedly made on January 4, 2017 (the "**Specified Douglas Transfer**").[6]

**G.**     *Transfers to Douglas Enterprises*

22.     The Trustee further asserts on information and belief that Douglas Enterprises was the recipient of one or more transfers from the Debtor within the four-year period immediately preceding the Petition Date.  The Trustee specifically asserts that Douglas Enterprises was the recipient of an electronic transfer in the amount of $225,000 made on December 23, 2015, after the closing of the Nursing Home Chain sale (the "**Specified Douglas Enterprises Transfer**").

**H.**     *The Douglas Claim*

23.     On March 22, 2018, following the bankruptcy filing, Douglas filed a proof of claim (Claim No. 4-1) to assert a non-priority unsecured claim against the Debtor in the amount of $362,725 (the "**Douglas Claim**") for "money loaned."  In relation to such loan(s) (collectively, the "**Alleged Douglas Loan**"), the Trustee asserts on information and belief that during the course of the Debtor's operations, Douglas made cash advances to the Debtor and maintained a running ledger balance of sums alleged to be due from the Debtor.

---

[6] *See* Complaint, ¶ 35 (listing each alleged transfer by date and amount).

## I.    *The Trustee's Complaint*

24.    Pursuant to the Complaint, the Trustee asserts the following causes of action against

the Defendants:

**Count I:**    **Avoidance and Recovery of Actual Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550 (against all Defendants)**. Pursuant to Count I, the Trustee seeks to avoid pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recover pursuant to section 550 of the Bankruptcy Code transfers of property of the Debtor allegedly made within two years of the Petition Date to Douglas, Douglas Enterprises, and Specialty Select, *including* the Lease Payments made to Specialty Select during such time frame, the Management Fee Payments made to Douglas Enterprises during such time frame, and "other transfers" allegedly made directly to Douglas and Douglas Enterprises during such time frame.

**Count II:**    **Avoidance and Recovery of Constructive Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550 (against all Defendants)**. Pursuant to Count II, the Trustee seeks to avoid pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recover pursuant to section 550 of the Bankruptcy Code the same transfers referenced in Count I.

**Count III:**    **Avoidance and Recovery of Actual and Constructive Fraudulent Transfers Pursuant to Texas Uniform Fraudulent Transfer Act and 11 U.S.C. §§ 544(b) and 550 (against all Defendants)**. Pursuant to Count III, the Trustee seeks to avoid pursuant to section 544(b) of the Bankruptcy Code and section 24.005 of the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code ch. 24 ("**TUFTA**"), and recover pursuant to section 550 of the Bankruptcy Code transfers of property of the Debtor allegedly made within four years of the Petition Date to Douglas, Douglas Enterprises, Specialty Select and the other Fee Owners, *including* Lease Payments made to Specialty Select during such time frame, Management Fee Payments made to Douglas Enterprises during such time frame, "other transfers" allegedly made directly to Douglas and Douglas Enterprises during such time frame, and the Sales Proceeds allegedly diverted to the Defendants.

**Count IV:**    **Avoidance and Recovery of Preferential Transfer Pursuant to 11 U.S.C. §§ 547 and 550 (against Douglas)**. Pursuant to Count IV, the Trustee seeks to avoid pursuant to section 547 of the Bankruptcy Code and recover pursuant to section 550 of the Bankruptcy Code "at least $19,860.39" (the amount of the Specified Douglas Transfer) allegedly paid by the Debtor to Douglas on account of an antecedent debt.

**Count V**:    **Breach of Fiduciary Duty (against Douglas)**.  Pursuant to Count V, the Trustee asserts that Douglas, together with "other individuals and entities acting in concert with him," allegedly plundered the Debtor's assets in order to enrich himself and put the assets out of the reach of the Debtor's creditors, and that in connection therewith Douglas (a) allegedly breached his duty of loyalty to the Debtor by arranging for contracts between the Debtor and his affiliated companies on terms heavily weighted in favor of the affiliates, by causing the Debtor to enter into a contract for allegedly illusory liability insurance coverage, and by arranging for the transfer of Sales Proceeds to Douglas or other Defendants, and (b) allegedly breached his duty of care to the Debtor by contracting with Brae to provide liability coverage which failed to cover known risks to the Debtor, including the Debtor's defense in the Resident Injury Cases, by failing and neglecting to perform his duties with due care and diligence, and by taking actions and making decisions that were allegedly tainted with self-interest.  The Trustee seeks the recovery of actual damages from Douglas and the equitable remedy of disgorgement from Douglas and the "other Defendants who benefited at the expense of the Debtor."

**Count VI**:    **Gross Negligence/Exemplary Damages (against Douglas)**.  Pursuant to Count VI, the Trustee alleges that the injuries to the Debtor resulted from Douglas' gross negligence and/or malice entitling the Trustee to an award of exemplary damages against Douglas.

**Count VII**:    **Objection to the Douglas Claim (against Douglas)**.  Pursuant to Count VII, the Trustee objects to allowance of the Douglas Claim.

**Count VIII**:    **Recharacterization of Douglas Claim (against Douglas)**.  Pursuant to Count VIII, if/to the extent the Court finds that the Douglas Claim is allowable, the Trustee requests that the claim be recharacterized as a capital contribution instead of true indebtedness.

### *DISCUSSION*

25.    Pursuant to the Motion, the Defendants request dismissal of the Complaint pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (the "**Federal Rules**"), which are made applicable to adversary proceedings by Rules 7008, 7009 and 7012(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  The Trustee disputes the

Motion, asserting that he has sufficiently pled each of the Counts of the Complaint.  To the extent determined otherwise, however, the Trustee requests leave to amend the Complaint.[7]

## I.
## Dismissal Standards

### A.  Pleading Sufficiency: Notice Requirements of Federal Rules 8 and 9(b)

26.    Federal Rule 8 requires a pleading stating a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[8]  "Each allegation must be simple, concise, and direct."[9]  The requirements of Federal Rule 8 are designed to "give the defendant fair notice of what the … claim is and the grounds upon which it rests."[10]

27.    When allegations of fraud are involved, Federal Rule 9(b) requires the pleading to also state with particularity the circumstances constituting fraud.[11]  Given the seriousness of fraud, the requirement of particularity is to, among other things, protect the reputation of a defending party against unsubstantiated assertions of fraudulent conduct in addition to providing adequate notice to the defending party of the specific alleged misconduct at issue.[12]  Importantly, Federal Rule 9(b) is not limited to claims of fraud.  Instead, "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."[13]

---

[7] Such request was made orally by Trustee's counsel, without opposition, at the dismissal hearing.  *See Life Partners Creditors' Trust v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 126 (5th Cir. 2019) (a formal motion for leave to amend is not necessary).

[8] Fed. R. Civ. P. 8(a)(2).

[9] Fed. R. Civ. P. 8(d)(1).

[10] *Moody v. American Nat'l Ins. Co*., 842 Fed. Appx. 875, 877 (5th Cir. 2021) (quoting *Twombly*, 550 U.S. at 555).

[11] Fed. R. Civ. P. 9(b) ("In alleging fraud …, a party must state with particularity the circumstances constituting fraud….").

[12] *See Ryan v. Brookdale Int'l Sys. Inc*., Civ. Action No. H-06-01819, 2008 WL 2405970, at *2 (S.D. Tex. June 11, 2008).

[13] *Lonestar Ladies Inv. Club v. Schlotzky's Inc*., 238 F.3d 363, 368 (5th Cir. 2001).

28.     While "[t]he particularity demanded by Rule 9(b) necessarily differs with the facts of each case,"[14] "Rule 9(b) typically requires 'the who, what, when, where, and how' [of the alleged fraud] to be laid out."[15]   Where fraudulent misrepresentations are alleged, Federal Rule 9(b) requires the claimant to allege "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'"[16]

## B.     *Pleading Sufficiency: Plausibility Requirement of Federal Rule 12(b)(6)*

29.     Pursuant to Federal Rule 12(b)(6), on motion of a defendant filed prior to the filing of an answer, a claim is subject to dismissal if the pleading in which the claim is asserted fails to state a claim upon which relief can be granted.[17]   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18]   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19]

30.     In assessing facial plausibility, a court is to accept as true all well-pleaded factual allegations set forth within the pleading for relief, even if doubtful in fact.[20]   But the allegations

---

[14] *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067-68 (5th Cir. 1994) (citing *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)).

[15] *Kreway v. Countrywide Bank, FSB*, 647 Fed. Appx. 437, 437-38 (5th Cir. 2016) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003)); *see also Reagor Auto Mall, Ltd. v. Firstcapital Bank of Texas, N.A. (In re Reagor-Dykes Motors, LP*), Adv. No. 20-05002, 2020 WL 4939180, at *10 (Bankr. N.D. Tex. Aug. 24, 2020) (citing *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir.), *cert. denied*, 558 U.S. 873 (2009)).

[16] *Tuchman*, 14 F.3d at 1068 (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir.), *cert. denied*, 522 U.S. 966 (1997).

[17] *See* Fed. R. Civ. P. 12(b)(6).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 570; *Baron v. Sherman (In re Ondova Ltd. Co.)*, 914 F.3d 990, 992-93 (5th Cir. 2019).

[19] *Iqbal*, 556 U.S. at 678.

[20] *Twombly*, 550 U.S. at 555; *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018).

must consist of more than mere labels and conclusions.[21] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[22] And the well-pleaded complaint rule is inapplicable to legal conclusions.[23] Courts "are not bound to accept as true 'a legal conclusion couched as a factual allegation.'"[24] Additionally, if a claim is predicated upon fraud, then the fraudulent conduct must be pled with particularity as required by Federal Rule 9(b) in order to state a claim for which relief can be afforded. "[D]ismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)."[25]

31.    The determination of facial plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" in applying the foregoing principles.[26] While "[t]he plausibility standard is not akin to a 'probability requirement,' [ ] it asks for more than a sheer possibility that a defendant has acted unlawfully."[27] Thus, to avoid dismissal, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"[28]

## C.    *Leave to Amend*

32.    Federal Rule 15(a)(2), made appliable to adversary proceedings by Bankruptcy Rule 7015, provides that a "court should freely give leave [to amend] when justice so requires."[29]

---

[21] *Twombly*, 550 U.S. at 555.

[22] *Iqbal*, 556 U.S. at 678; *see also Allen*, 907 F.3d at 177 (explaining that "'naked assertion[s]' devoid of 'further factual enhancement'" are not sufficient to prevent dismissal) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)).

[23] *Iqbal*, 556 U.S. at 678.

[24] *Ondova Ltd. Co*., 914 F.3d at 993 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[25] *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 901 (5th Cir. 1997) (citing *Lovelace v. Software Spectrum Inc*., 78 F.3d 1015, 1017 (5th Cir. 1996)).

[26] *Iqbal*, 556 U.S. at 679.

[27] *Id.* at 678.

[28] *Twombly*, 550 U.S. at 555.

[29] Fed. R. Civ. P. 15(a)(2); *see also* Fed. R. Bankr. P. 7015.

Thus, "Rule 15(a) 'evinces a bias in favor of granting leave to amend'"[30] and, as a general matter, leave to amend should be freely given in the absence of a stated basis to deny such relief.[31] That said, "[a] movant is required to give the court some notice of the nature of his or her proposed amendments."[32] And if it appears to the court that the amendment would be futile, then leave need not be granted.[33]

## II.
## Evaluation of Asserted Bases for Dismissal

### A.     Claims for the Avoidance of Contractual Payments

33.     The Defendants' first area of attack focuses on the Trustee's claims in Counts I, II and III for the avoidance of Lease Payments and Management Fee Payments made by the Debtor prior to the Petition Date (collectively, "**Contractual Payments**"). According to the Defendants, to succeed on any of these avoidance claims, "the Trustee *must* establish that the Debtor received less than reasonably equivalent value for the Lease Payments and the Management Fees."[34] Predicated on such assertion, the Defendants contend that because all of the Contractual Payments were made by the Debtor in accordance with the terms of the Specialty Select Lease and the Specialty Select Management Agreement (collectively, the "**Specialty Select Agreements**"), and because the Specialty Select Agreements, themselves, are not the subject of any avoidance claims, the Trustee has failed to state a plausible claim for the avoidance of the Contractual Payments

---

[30] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

[31] *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004).

[32] *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).

[33] *Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020).

[34] Defendants' Brief, ¶ 24 (emphasis in original).

because, as a matter of law, the payment of a contractual obligation constitutes reasonably equivalent value in exchange for the discharge of such contractual obligation.

34.     The Trustee acknowledges that he is not seeking to avoid either of the Specialty Select Agreements.[35] He nevertheless argues that the Contractual Payments are avoidable because they allegedly exceeded the fair market value of the leasehold interest and services received in exchange, having the "net economic effect" of causing a "dissipation of the Debtor's estate."[36]

35.     While the Defendants dispute the legal predicate of the Trustee's argument, to the extent the Court agrees with the Trustee, the Defendants also argue that the fair market value assertions contained within the Complaint are wholly conclusory and unsubstantiated, warranting dismissal on that basis as well. Each of these arguments is considered in the context of the nature of the avoidance claim asserted.

### 1.     *Avoidance on the Basis of Actual Fraud*

36.     First, pursuant to Count I of the Complaint, the Trustee claims that all Contractual Payments made by the Debtor within two years of the Petition Date are avoidable as actually fraudulent pursuant to section 548(a)(1)(A) of the Bankruptcy Code. Pursuant to Count III, the Trustee claims, among other things, that all Contractual Payments made by the Debtor within four years of the Petition Date are avoidable on the same basis pursuant to section 24.005 of TUFTA (in conjunction with section 544(b) of the Bankruptcy Code).

37.     Section 548(a)(1)(A) of the Bankruptcy Code provides, in relevant part, that:

> The trustee may avoid any transfer … of an interest of the debtor in property …
> that was made … on or within 2 years before the date of the filing of the petition,
> if the debtor voluntarily or involuntarily … made such transfer … with actual intent

---

[35] Counsel for the Trustee confirmed as much at the dismissal hearing. As a result, it is unnecessary for the Court to consider the parties' respective statute of limitations and tolling doctrine arguments briefed in relation to the avoidability of the Specialty Select Agreements.

[36] Trustee's Brief, ¶¶ 43, 45.

to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made …, indebted.

11 U.S.C. § 548(a)(1)(A). Similarly, section 24.005 of TUFTA provides, in relevant part, that:

A transfer made … by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made …, if the debtor made the transfer … with actual intent to hinder, delay, or defraud any creditor of the debtor.

Tex. Bus. & Com. Code § 24.005(a)(1). In each case, based upon the statutory language set out above, the Trustee's claim for the avoidance of the Contractual Payments as actually fraudulent requires proof of, among other things, the Debtor's "actual intent to hinder, delay, or defraud" one or more of the Debtor's creditors.

38.    Rarely will a plaintiff have direct evidence of a debtor's intent to hinder, delay or defraud. Instead, plaintiffs often seek to prove such intent by circumstantial evidence in the form of various badges of fraud indicative of such intent, including the following:[37]

(1)    The transfer was to an insider;

(2)    The debtor retained possession or control of the property transferred after the transfer;

(3)    The transfer was concealed;

(4)    Before the transfer was made, the debtor had been sued or threatened with suit;

(5)    The transfer was of substantially all of the debtor's assets;

(6)    The debtor absconded;

(7)    The debtor removed or concealed assets;

(8)    The value of the consideration received by the debtor was less than reasonably equivalent to the value of the asset transferred;

(9)    The debtor was insolvent or became insolvent shortly after the transfer was made;

(10)   The transfer occurred shortly before or shortly after a substantial debt was incurred;

---

[37] See Reed v. Genter (In re Genter), Adversary No. 18-03361-sgj, 2021 WL 1112538, at *4-*5 (Bankr. N.D. Tex. Mar. 23, 2021); Valley Ridge Roofing & Constr., LLC v. Silver State Holdings, Assignee-7901 Boulevard 26 LLC (In re Silver State Holdings, Assignee-7901 Boulevard 26 LLC), Adversary No. 19-4043-MXM, 2020 WL 7414434, at *18-*19 (Bankr. N.D. Tex. Dec. 17, 2020) (citing Soza v. Hill (In re Soza), 542 F.3d 1060, 1067 (5th Cir. 2008)); Tex. Bus. & Com. Code § 24.005(b).

(11)    The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor;

(12)    The existence or cumulative effect of the pattern of series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(13)    The general chronology of events and transactions under inquiry.

39.    With the foregoing in mind, the Defendants assert that the fact that the Debtor allegedly received reasonably equivalent value in exchange for the Contractual Payments is dispositive of the Trustee's claims for avoidance on actual fraud grounds.  Such argument, however, improperly attempts to transform a single badge of fraud into an independent element of an actual fraudulent transfer claim.  Importantly, "[n]ot all, or even a majority, of the 'badges of fraud' must exist to find actual fraud; instead '[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.'"[38]  Correspondingly, the absence of a particular badge of fraud is not, in and of itself, necessarily indicative of a lack of intent on the part of the debtor transferor.

40.    Thus, while it is true that a debtor's receipt of reasonably equivalent value in exchange for a transfer negates one of the badges of fraud typically considered in assessing actual fraudulent intent, unlike the case of avoidance on constructive fraud grounds (discussed below), the receipt of reasonably equivalent value is not dispositive of the question of whether the debtor intended to hinder, delay or defraud its creditors in making the transfer, particularly where other badges of fraud have been alleged.[39]

---

[38] *Silver State Holdings*, 2020 WL 7414434, at *19 (quoting *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988)).

[39] *See, e.g., Brandt v. Leasing One Corp. (In re Equipment Acquisition Res., Inc.)*, 481 B.R. 433, 440 (Bankr. N.D. Ill. 2012) ("Unlike transfers that are only constructively fraudulent, the equivalence of value given in exchange for the actual intent fraudulent transfer is immaterial to the question whether the transfer is actually fraudulent").  Cases in which the satisfaction of contractual liability has been found to defeat a claim for the avoidance of a transfer on actual fraud grounds have typically involved a transfer to a *non-insider* pursuant to an agreement *negotiated in good faith and at arms' length.  See, e.g., Lehman Bros. Special Fin. Inc. v. Bank of Am. Nat'l Ass'n (In re Lehman Bros. Holdings Inc.)*, 553 B.R. 476, 508-09 (Bankr. S.D.N.Y. 2016) (emphasizing the good faith and arms' length nature of the

41.     Perhaps realizing as much, the Defendants add that the Trustee has failed to sufficiently plead any facts suggesting that the Contractual Payments were improper or made for any improper purpose.  In this regard, the Defendants emphasize that the Trustee's claims for avoidance on actual fraud grounds are predicated on the alleged setting of the Contractual Payments at a level "above market value," but that the "above market value" allegations of the Complaint, which are made on "information and belief," are wholly conclusory without any supporting factual basis.

42.     The Trustee counters that in evaluating a request for dismissal, the entirety of the complaint must be considered and that when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, fraud may be pled on information and belief "if accompanied by a statement of the facts upon which the belief is based."[40]  While both propositions are true,[41] curiously the Trustee never points to any factual allegations within the Complaint upon which the "information and belief" allegations with respect to the "above market value" of the Contractual Payments were made.  Instead, the Trustee sidesteps the issue altogether by suggesting that the assertions are supported by the pattern of self-dealing otherwise alleged within the Complaint.  Such maneuvering, however, fails to adequately state any "information" or any basis for the "belief" upon which the above market value allegations have been made.  And the Court is neither obligated to "strain to find inferences favorable to the [Trustee]" within the Complaint, nor to

---

agreements), *aff'd*, 2018 WL 1322225 (S.D.N.Y. 2018), *aff'd*, 970 F.3d 91 (2nd Cir. 2020); *Sherman v. FSC Realty LLC (In re Brentwood Lexford Partners, LLC)*, 292 B.R. 255 (Bankr. N.D. Tex. 2003) (involving non-insider payments to professional firms with no allegation of any unfair terms of the engagement).

[40] Response, at p.6; Trustee's Brief, ¶ 39.

[41] *See, e.g., Basic Capital Mgmt., Inc. v. Dynex Capital, Inc*., 976 F.3d 585, 589 (5th Cir. 2020) (court to consider the complaint in its entirety when evaluating a motion to dismiss); *Steiner v. Southmark Corp*., 734 F.Supp. 269, 273 (N.D. Tex. 1990) (recognizing the relaxation of Federal Rule 9(b) to allow for allegations of fraud on information and belief as to matters within the opposing party's knowledge "if accompanied by a statement of the facts upon which the belief is based").

"accept 'conclusory allegations, unwarranted deductions, or legal conclusions'" included within the Complaint.[42]

43.     Thus, because the Trustee hinges his claim that the Debtor intended to hinder, delay or defraud its creditors in making the Contractual Payments on such wholly unsubstantiated above market value allegations, the Trustee has failed to plausibly allege a claim for avoidance of the Contractual Payments on actual fraud grounds, thereby warranting the dismissal of Counts I and III (as to actual fraud) to such extent.[43]   Because the Complaint also includes a number of allegations with respect to various badges of fraud, however, the Trustee will be granted leave to replead the Counts with greater particularity, including as discussed below in relation to certain of the Defendants' other arguments.

### 2.     *Avoidance on the Basis of Constructive Fraud*

44.     Next, pursuant to Count II of the Complaint, the Trustee claims that all Contractual Payments made by the Debtor within two years of the Petition Date are avoidable as constructively fraudulent pursuant to section 548(a)(1)(B) of the Bankruptcy Code.   Pursuant to Count III, the Trustee claims, among other things, that all Contractual Payments made by the Debtor within four years of the Petition Date are avoidable on the same basis pursuant to section 24.005 of TUFTA (in conjunction with section 544(b) of the Bankruptcy Code).

45.     Section 548(a)(1)(B) of the Bankruptcy Code provides, in relevant part, that:

> The trustee may avoid any transfer … of an interest of the debtor in property …
> that was made … on or within 2 years before the date of the filing of the petition,
> if the debtor voluntarily or involuntarily … received less than a reasonably
> equivalent value in exchange for the transfer …; and … was insolvent on the date

---

[42] *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[43] *See Iqbal*, 556 U.S. at 678 (a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not sufficiently comply with Federal Rule 8 and, thus, will not escape dismissal) (quoting *Twombly*, 550 U.S. at 557)).

> that such transfer was made …, or became insolvent as a result of such transfer …; was engaged in business … for which any property remaining with the debtor was an unreasonably small capital; [or] intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured….

11 U.S.C. § 548(a)(1)(B)(i), (ii)(I)-(III).  Similarly, section 24.005 of TUFTA provides, in relevant part, that:

> A transfer made … by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made …, if the debtor made the transfer … without receiving a reasonably equivalent value in exchange for the transfer …, and the debtor … was engaged … in a business … for which the remaining assets of the debtor were unreasonably small in relation to the business …; or … intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Tex. Bus. & Com. Code § 24.005(a)(2).  In each case, based upon the statutory language set out above, the Trustee's claims for the avoidance of the Contractual Payments as constructively fraudulent requires proof of, among other things, the Debtor's receipt of less than reasonably equivalent value in exchange for each of the Contractual Payments made.

46.    "Whether a debtor received reasonably equivalent value is a two-part inquiry: (1) whether the debtor received value, and (2) whether that value was reasonably equivalent."[44]  In relation to the first prong of the inquiry, section 548(d)(2) of the Bankruptcy Code defines "value" as including the "satisfaction … of a present or antecedent debt of the debtor…."[45]  Similarly, section 24.004 of TUFTA provides that "[v]alue is given for a transfer … if, in exchange for the transfer, … an antecedent debt is … satisfied…."[46]  In relation to the second prong of the inquiry, "[f]or any such value to be reasonably equivalent, the debtor must receive 'value that is

---

[44] *Jalbert v. Wessel GmbH (In re Louisiana Pellets, Inc.)*, 838 Fed. Appx. 45, 49 (5th Cir. 2020).

[45] *See* 11 U.S.C. § 548(d)(2)(A).

[46] *See* Tex. Bus. & Com. Code § 24.004(a).

substantially comparable to the worth of the transferred property.'"[47] Both the value of the transfer made and the value of the consideration received in exchange are to be determined as of the date of the transfer.[48] "Although the minimum quantum necessary to constitute reasonably equivalent is undecided, it is clear that the debtor need not collect a dollar-for-dollar equivalent to receive reasonably equivalent value."[49] But "[w]hen a debtor makes a payment on antecedent debt and receives a dollar-for-dollar reduction of that debt, … the question is easy because the debtor by definition receives reasonably equivalent value – indeed, *exactly* equivalent value, assuming, of course that the debt itself was based upon value."[50] Thus, "[c]ourts have regularly held that 'when a transfer is made to pay an antecedent debt, the transfer may not be set aside as constructively fraudulent.'"[51]

47. With the foregoing in mind, inasmuch as the Trustee has not asserted a claim to avoid either of the Specialty Select Agreements, has not otherwise challenged the validity or enforceability of the Specialty Select Agreements, and has not disputed the Debtor's receipt of the leasehold interest rights or managerial services in exchange for the payments, the Debtor undisputedly received "value" in exchange for the Contractual Payments because each of the payments resulted in the satisfaction of contractual obligations incurred under the terms of the

---

[47] *Louisiana Pellets*, 838 Fed. Appx. at 49-50 (quoting *BFP v. Resolution Trust Corp*., 511 U.S. 531, 548 (1994)).

[48] *Id.* (explaining that, because value is to be determined as of the time of the transfer, current fair market value may have little bearing upon the equivalence of the exchange at the time of the transfer); *see also Hinsley v. Boudloche (In re Hinsley)*, 201 F.3d 638, 644 (5th Cir. 2000).

[49] *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1125-26 (5th Cir. 1993), *abrogated in part on other grounds by Texas Truck Ins. Agency, Inc. v. Cure (In re Dunham)*, 110 F.3d 286, 288-89 (5th Cir. 1997).

[50] *Louisiana Pellets*, 838 Fed. Appx. at 50 (emphasis in original).

[51] *Garner v. Sherwood (In re Jones)*, Adversary No. 18-04098, 2019 WL 1167812, at *8 (Bankr. N.D. Tex. Mar. 11, 2019) (quoting *Walker v. Pasteur (In re Aphton Corp.)*, 423 B.R. 76, 89 (Bankr. D. Del. 2010)); *see also Southeast Waffles, LLC v. United States Dep't of Treasury/IRS (In re Southeast Waffles, LLC)*, 460 B.R. 132, 140 (6th Cir. B.A.P. 2011) ("There is considerable case law holding that a dollar for dollar reduction in debt is sufficient to establish equivalent value"), *aff'd*, 702 F.3d 850 (6th Cir. 2012); *Ingalls v. SMTC Corp. (In re SMTC Mfg. of Tex.)*, 421 B.R. 251, 309 (Bankr. W.D. Tex. 2009).

Specialty Select Agreements.  Moreover, because each of the Contractual Payments also resulted in a dollar-for-dollar satisfaction of the contractual liability imposed under the terms of the applicable Specialty Select Agreement, the Debtor also received reasonably equivalent value in exchange for each such Contractual Payment.[52]

48.    Consequently, because the Debtor's receipt of less than reasonably equivalent value is an essential element of the Trustee's claims for avoidance of the Contractual Payments on constructive fraud grounds and the Complaint fails to plausibly state a basis upon which such element may be satisfied, Counts II and III (as to constructive fraud) will be dismissed.

**B.    *Other Asserted Grounds for Dismissal***

49.    Many of the Defendants' other arguments for dismissal have been made in relation to more than one Count under the Complaint.  Therefore, for efficiency, such arguments are addressed in a categorical fashion below.  Thereafter, the remaining, individualized arguments are separately addressed.

**1.    *Group Defendant Allegations (Fraudulent Transfer Claims)***

50.    First, in relation to Counts I, II and III of the Complaint, the Defendants also take issue with various of the allegations made on a group basis against all of the Defendants.  The Defendants highlight, for example, the Complaint's allegation that the "Defendants plundered the Debtor's assets"[53] without identifying which particular Defendant allegedly "plundered" what particular asset.  The Defendants additionally point to the Complaint's generic reference to "[c]ertain of the Defendants" as the initial transferees,[54] and "[c]ertain of the Defendants" as the

---

[52] *See, e.g., Reinbold v. Morton Cmty. Bank (In re Mid-Illini Hardwoods, LLC)*, 576 B.R. 598, 607 (Bankr. C.D. Ill. 2017) ("A debtor's payment of its own debt constitutes a dollar-for-dollar satisfaction of a contractual debt, which is reasonably equivalent value") (citing *Freeland v. Enodis Corp.*, 540 F.3d 721, 735 (7th Cir. 2008)).

[53] *See* Complaint, ¶¶ 42, 49 and 58.

[54] *See* Complaint, ¶¶ 44, 52 and 62.

subsequent transferees,[55] without identifying which Defendants were initial transferees and which Defendants were subsequent transferees in relation to each particular fraudulent transfer. The Defendants argue that individualized allegations with respect to each targeted Defendant are necessary to comply with both Federal Rule 8 and Federal Rule 9(b).[56]

51.     The Trustee disputes any insufficiency of the allegations, asserting that the Complaint adequately identifies both the Defendants and the wrongful conduct at issue. In relation to the "plundering" allegations, for example, the Trustee points to the Complaint's identification of Douglas and Douglas Enterprises as the Defendants who intentionally set the Contractual Payment rates above market value to minimize the Debtor's profitability and cash reserves.[57] And the Trustee points to the Complaint's identification of "Douglas, acting on his own behalf and on behalf of affiliated entities" (which, from other portions of the Complaint, include Douglas Enterprises and the Fee Owners)[58] as the one who caused the Sales Proceeds to be diverted to parties other than the Debtor.[59]

52.     From a transferee standpoint, the Complaint expressly identifies Specialty Select and Douglas Enterprises as the initial transferees of the Contractual Payments[60] and "Douglas,

---

[55] See Complaint, ¶¶ 45, 53 and 63.

[56] Some question exists with respect to the applicability of Federal Rule 9(b) to fraudulent transfer claims that are not predicated upon any alleged fraudulent conduct. See, e.g., Life Partners Holdings, 926 F.3d at 118 (noting the existence of conflicting decisions but finding it unnecessary to "weigh in on this vexing question" based upon the particular facts of the case); Janvey v. Alguire, 846 F.Supp.2d 662, 676 (N.D. Tex. 2011) (finding no principled reason to apply the requirements of Federal Rule 9(b) to fraudulent transfer claims that are not predicated on allegations of fraudulent conduct). Perhaps given the nature of the allegations included within the Complaint, the Trustee does not take issue with the Defendants' assertion that Federal Rule 9(b) applies to each of the fraudulent transfer claims alleged. In fact, the Trustee has responded on the basis of Federal Rule 9(b)'s applicability. Therefore, the Court will likewise consider the sufficiency of the allegations under Federal Rule 9(b) without determining whether each of the claims is subject to Federal Rule 9(b) pleading standards.

[57] See Complaint, ¶¶ 24 and 26.

[58] See, e.g., Complaint, ¶¶ 19 and 60.

[59] See Complaint, ¶¶ 43, 50 and 59.

[60] See Complaint, ¶¶ 22, 24-25, 43, 50 and 59.

Douglas Enterprises and Specialty Select" as the possible subsequent transferees of such payments, as applicable.[61] In the case of the Sales Proceeds, while the Complaint does not separately identify any initial or subsequent transferees, it identifies each of the Defendants as a transferee candidate – whether initial or subsequent.[62]

53.     Additionally, while the Defendants take issue with the Complaint's relaxed reference to "certain of the Defendants" as initial and subsequent transferees, respectively, the Trustee, having had no prior involvement with the Debtor, any of the Defendants, or any of their respective operations (and, thus, no direct knowledge of the parties' actions), has identified all of the transferee candidates by name and included sufficient factual allegations within the Complaint to support the basis for such identification.  Equally material, each of the Defendants himself/itself independently knows whether and to what extent he/it was an initial transferee or subsequent transferee of any of the Contractual Payments and the Sales Proceeds.[63]  Thus, given such knowledge and the Trustee's identification of all transferee candidates and their relationship to the Debtor, the Complaint sufficiently identifies the Defendants and their connection to the Contractual Payments and Sales Proceeds under the facts and circumstances of this case.[64]

---

[61] *See* Complaint, ¶¶ 43, 50 and 59.

[62] *See* Complaint, ¶¶ 29 and 61.

[63] *See Reed v. Linehan (In re Soporex, Inc.)*, 463 B.R. 344, 394 n.24 (Bankr. N.D. Tex. 2011) (recognizing that the "*Twombly* plausibility standard does not prevent a plaintiff from pleading facts 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant") (citing *Arista Records LLC v. Doe 3*, 604 F.3d 110 (2nd Cir. 2010)).

[64] The Defendants argue that the Trustee has also failed to plead any individualized facts in support of the Complaint's allegation that the subsequent transferee Defendants did not take the transfers in good faith.  Given the Complaint's allegations with respect to Douglas' direct or indirect control of each of the other Defendants and the allegations with respect to Douglas' own conduct, however, the Complaint adequately states a basis for the lack of good faith.  *See also* Fed. R. Civ. P. 9(b) (providing that intent, knowledge and other conditions of a person's mind may be alleged generally).  More importantly, *lack of good faith* is not an element that the Trustee must prove to recover under section 550 of the Bankruptcy Code.  *See* 11 U.S.C. § 550(a) (no reference to good faith).  Instead, the *existence of good faith* is an element of an *affirmative defense* under section 550 on which a subsequent transferee asserting the defense will bear the burden of proof.  *See id.* § 550(b)(1) ("The trustee may not recover under section (a)(2) of this section [applicable to subsequent transferees] from … a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, *in good faith*, and without knowledge of the voidability of the transfer avoided") (emphasis

54.    Accordingly, the Defendants' request for the dismissal of Counts I, II and III on the basis of group Defendant allegations will be denied to the extent Counts I, II and III seek the avoidance and recovery of the Contractual Payments and Sales Proceeds.[65]

### 2.    *Allegations of Unspecified Transfers (Fraudulent Transfer Claims)*

55.    Next, the Defendants take issue with the generalized reference to unspecified transfers within Counts I, II and III of the Complaint.[66]  In this regard, while the Complaint makes specific reference to the Contractual Payments and Sales Proceeds, it only more generally refers to the Debtor's "assets" allegedly plundered,[67] the "Debtor's property" allegedly transferred,[68] and the "other transfers made directly to Douglas and Douglas Enterprises."[69]  The Defendants assert that the lack of specificity with respect to such transfers is a basis for dismissal of the claims.

56.    In response, the Trustee relies upon the Complaint's allegations with respect to the Contractual Payments and Sales Proceeds as illustrative of the sufficiency of the Complaint, but otherwise fails to highlight any portions of the Complaint identifying any other property or categories of property targeted by Counts I, II and III.  That said, paragraphs 40 (part of Count I), 47 (part of Count II) and 55 (part of Count III) of the Complaint each incorporate by reference

---

added); *see also Wasserman v. Bressman (In re Bressman),* 327 F.3d 229, 235 (3rd Cir. 2003) (treating Bankruptcy Code § 550(b)(1) as an affirmative defense "with respect to which the transferee has the burden of persuasion"); *Segner v. Ruthven Oil & Gas, LLC*, Civil Action No. 3:12-CV-1318-B, 2018 WL 3155827, at *4 (N.D. Tex. June 28, 2018) (referring to Bankruptcy Code § 550(b) as an affirmative defense), *aff'd sub nom. Segner v. Cianna Res. Inc. (In re Provident Royalties LLC)*, 777 Fed. Appx. 115 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 1115 (2020).

[65] With respect to other transfers, see the separate discussion *infra* with respect to the insufficiency of the transfer allegations of the Complaint.

[66] The Defendants raise the same issue in relation to Count IV to the extent that Count IV seeks the avoidance of any transfer other than the Specified Douglas Transfer.  Because the Court construes Count IV as being focused solely and exclusively on the Specified Douglas Transfer, the Defendants' argument will not be considered in relation to Count IV.  *See also* Trustee's Response, at pp.7-8 (referring solely and exclusively to the Specified Douglas Transfer as the transfer at issue under Count IV).

[67] *See* Complaint, ¶¶ 42, 49 and 58.

[68] *See* Complaint, ¶¶ 43, 50 and 59.

[69] *See id.*

each of the previously asserted factual allegations of the Complaint, and such prior factual allegations include allegations with respect to the Douglas Transfers made by the Debtor to Douglas[70] and the Specified Douglas Enterprises Transfer made by the Debtor to Douglas Enterprises.[71]  Thus, while not expressly identified within the portions of the Complaint dedicated to Counts I, II or III, the Douglas Transfers and the Specified Douglas Enterprises Transfer ostensibly constitute certain of the "other transfers made directly to Douglas and Douglas Enterprises."  To satisfy the notice and pleading requirements of Federal Rules 8 and 9(b) and avoid dismissal under Federal Rule 12(b)(6), however, the Complaint must clearly identify the transfers sought to be avoided.  Here, none of Counts I, II and III expressly refers to any of the Douglas Transfers, the Specified Douglas Enterprises Transfer, or any other transfer other than the Contractual Payments and Sales Proceeds (and the Sales Proceeds are expressly referenced only in relation to Count III).

57.    Accordingly, to the extent that Counts I and II seek the avoidance of transfers of assets other than the Contractual Payments, and to the extent that Count III seeks the avoidance of transfers of assets other than the Contractual Payments and the Sales Proceeds, the Defendants' request for dismissal will be granted.  However, the Trustee will be granted leave to amend the Complaint to expressly identify the Sales Proceeds within either or both of Counts I and II, and to expressly identify the Douglas Transfers and Specified Douglas Enterprises Transfer within one or more of Counts I, II and III, as applicable.

---

[70] *See* Complaint, ¶¶ 35, 40, 47 and 55.

[71] *See* Complaint, ¶¶ 38, 40, 47 and 55.

### 3.    *Allegations of Intent (Actual Fraudulent Transfer Claims)*

58.    In relation to Counts I and III (as to actual fraud), the Defendants additionally argue that the Complaint fails to adequately allege the factual basis for the alleged intent necessary to avoid each of the transfers at issue.  Among other things, the Defendants assert that while certain badges of fraud may be relied upon to substantiate the existence of actual fraud, Federal Rule 9(b) nevertheless requires a complaint to plead with particularity the facts relied upon by the plaintiff to support such badges of fraud and, ultimately, the actual fraud alleged.

59.    In response, the Trustee simply reiterates the ability of a plaintiff to rely on badges of fraud to establish actual fraud and takes the fairly high-level approach of generally referring to the Complaint's allegations of Douglas', Douglas Enterprises' and Specialty Select's actions, as applicable, in allegedly setting the above market contractual rates and causing the Contractual Payments to be made in relation thereto and in allegedly diverting the Sales Proceeds away from the Debtor.

60.    There are two problems with the Trustee's approach.  First, both in the Complaint and in responding to the Motion, the Trustee improperly focuses on the *Defendants'* intent as opposed to the *Debtor's* intent.  For example, in Count I of the Complaint, the Trustee alleges that the "*Defendants* plundered the Debtor's assets, *with the actual and intended effect of hindering the Debtor's creditors* from receiving the payments due them."[72]  And in Count III, after alleging that "*Douglas, acting on his own behalf and on behalf of affiliated entities*, caused Debtor's property to be transferred"[73] and "diverted from the Debtor" the Sales Proceeds,[74] the Trustee alleges that "[a]ll of these transfers were made with the actual intent to hinder, delay, or defraud Debtor's

---

[72] Complaint, ¶ 42 (emphasis added).

[73] Complaint, ¶ 59 (emphasis added).

[74] Complaint, ¶ 60.

creditors,"[75] thereby apparently linking the alleged intent to hinder, delay or defraud to Douglas. To succeed on a claim for the avoidance of an actual fraudulent transfer, however, a plaintiff must establish that the *debtor transferor* intended to hinder, delay or defraud its creditors in making the transfer, not that the *recipient transferees* intended such outcome.[76]

61.     Second, while there are scattershot allegations within the Complaint that touch upon various badges of fraud (*e.g.*, the insider status of the transferee Defendants,[77] the existence of the personal injury/wrongful death litigation in advance of the sale,[78] the alleged post-petition attempt by Douglas to recharacterize the Sales Proceeds,[79] the Debtor's alleged inability to satisfy claims,[80] etc.), the Complaint fails to tie them together in a sufficiently succinct manner in respect of Counts I and III to adequately and plausibly allege the existence of fraudulent intent on the part of the Debtor with respect to each particular targeted transfer.  In this regard, properly focused on the Debtor's intent, the Complaint fails to provide adequate notice to the Defendants of the particular actionable fraudulent intent at issue in relation to each transfer.  In relation to Count I, the only reference to intent is with respect to the *Defendants'* actions, alleging that such actions had the intended "effect" of hindering the Debtor's creditors.[81]  Nowhere within Count I, however, does the Complaint expressly allege that the Debtor intended to hinder any of its creditors or the

---

[75] Complaint, ¶ 61.

[76] *See SEC v. Resource Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007) (explaining that transferee's knowing participation in the fraudulent conduct is irrelevant; the fraudulent transfer statute "requires only a finding of fraudulent intent on the part of the 'debtor'"); *Payne v. Simba Ventures Holdings, Ltd. (In re Integra Healthcare Holdings, Ltd.)*, Adversary No. 10-4241, 2012 WL 4434680, at *6 (Bankr. E.D. Tex. Sept. 24, 2012) ("Whether a conveyance is fraudulent under § 548(a)(1)(A) is determined by reference to the intent of the debtor-transferor in making the transfer; 'the state of mind of the transferee is irrelevant'") (quoting *Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC)*, 439 B.R. 284, 304 (S.D.N.Y. 2010)).

[77] *See, e.g.*, Complaint, ¶¶ 19-20.

[78] *See* Complaint, ¶ 32.

[79] *See, e.g.*, Complaint, ¶¶ 30-31.

[80] *See* Complaint, ¶¶ 32, 51.

[81] *See* Complaint, ¶ 42.

factual basis for such belief. In relation to Count III, the Trustee does nothing more than recite the alternative statutory grounds for avoidance – *i.e.* merely alleging in the disjunctive that all of the transfers at issue "were made with the actual intent to hinder, delay, or defraud Debtor's creditors."[82] But "a formulaic recitation of the elements of a cause of action will not do[.]"[83]

62. In relation to both Counts, the Complaint fails to specify (1) whether the Debtor intended to hinder its creditors, intended to delay its creditors, or intended to defraud its creditors (or some specified combination thereof), (2) how or in what way the Debtor intended such harm, (3) towards which creditors or groups or categories of creditors the Debtor's conduct was directed, and (4) the factual basis for the Trustee's belief that the Debtor intended such conduct to affect these creditors or groups or categories of creditors (including, as applicable, any relevant badges of fraud and the factual basis for the existence of such badges of fraud).

63. Thus, because Counts I and III (as to actual fraud) fail to include factual allegations having the level of particularity mandated by Federal Rule 9(b) to state a plausible claim for relief, they are subject to dismissal. Nevertheless, because of the Complaint's inclusion of allegations involving various badges of fraud, the Trustee will be granted leave to replead Counts I and III to remedy the deficiencies noted.

### 4. Triggering Creditor Allegations (TUFTA Fraudulent Transfer Claims)

64. Count III of the Complaint sets out the Trustee's fraudulent transfer claims under TUFTA by way of section 544(b) of the Bankruptcy Code. Section 544(b) of the Bankruptcy Code provides, in relevant part, that:

> [T]he trustee may avoid any transfer of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim that is allowable

---

[82] Complaint, ¶ 61.

[83] *Twombly*, 550 U.S. at 555.

under section 502 of this title or that is not allowable only under section 502(e) of
this title.

11 U.S.C. § 544(b)(1). According to the Trustee, section 544(b) "allows the trustee to avoid a
transfer of the debtor's interest in property that is voidable under applicable law – in this case,
TUFTA."[84] Concurring with the Trustee's assessment that the provisions of section 544(b) are
critical to the Trustee's ability to pursue any TUFTA claims, the Defendants assert that Count III
must be dismissed because the Complaint fails to identify any creditor holding an unsecured claim
that is allowable under section 502 of the Bankruptcy Code (or that is not allowable only under
section 502(e) of the Bankruptcy Code) who could avoid any of the alleged fraudulent transfers at
issue under TUFTA.

65.     In this regard, by its terms TUFTA does not grant any avoidance rights to a trustee
in bankruptcy. Instead, TUFTA grants those rights to the creditors of a transferor debtor who have
been harmed by the fraudulent transfer at issue.[85] With that in mind, section 544(b)(1) of the
Bankruptcy Code provides the necessary bridge to the trustee, bestowing upon the trustee the right
to step into the shoes of such an unsecured creditor – commonly referred to as a "triggering
creditor" – to assert the triggering creditor's avoidance rights under TUFTA.[86] Here, the
Defendants assert that Count III fails to state a plausible claim for relief because the Complaint
fails to identify any triggering creditor in relation to the TUFTA claims asserted.

---

[84] Complaint, ¶ 57.

[85] *See* Tex. Bus. & Com. Code § 24.008 (providing various remedies to the transferor debtor's creditors).

[86] *See Katchadurian v. NGP Energy Capital Mgmt., LLC (In re Northstar Offshore Group)*, LLC, 616 B.R. 695, 724
(Bankr. S.D. Tex. 2020) ("'Under section 544(b)(1), the trustee succeeds to the rights of an unsecured creditor in
existence at the commencement of the case who may avoid the transfer under applicable' federal, state, or local law….
'[T]he so-called "triggering" creditor must be the same creditor on both the transfer date and the date of
commencement of the case….'") (citations omitted) (quoting 5 Collier on Bankruptcy ¶ 544.06 (Richard Levin &
Henry J. Sommer eds., 16th ed.)).

66. Surprisingly, the Trustee fails to directly address the omission within his Brief. At best, in a portion of the Response dedicated to section 544 of the Bankruptcy Code, the Trustee makes a cryptic reference to the prepetition denial of insurance coverage for "all of the wrongful death claims following the multiple personal injury and wrongful deaths" that occurred prepetition,[87] thereby ostensibly suggesting that the holders of such claims are the triggering creditors for purposes of section 544(b).[88] Yet, because the Complaint fails to expressly allege as much, Count III of the Complaint, as currently framed, fails to plausibly state a basis for relief under section 544(b) and TUFTA.

67. Accordingly, Count III of the Complaint will be dismissed. However, given the Complaint's express reference to the Resident Injury Cases and the claims asserted in the Debtor's bankruptcy case in relation thereto, the Trustee will be granted leave to replead Count III to more specifically allege facts with respect to the holders of the Resident Injury Case claims as triggering creditors.

**5. *Insolvency Allegations (Constructive Fraud and Preferential Transfer Claims)***

68. Next, in relation to Counts II, III (as to constructive fraud) and IV, the Defendants argue that the Complaint fails to adequately allege facts that substantiate the Debtor's insolvency on the date of each transfer, thereby warranting the dismissal of the Counts. With respect to Count IV, the Trustee emphasizes the existence of the Resident Injury Cases as the basis for insolvency,[89] but the Complaint, itself, does not directly allege as much as part of Count IV. With respect to

---

[87] *See* Response, at p. 7.

[88] Within the Complaint, itself, the Trustee specifically refers to the two Wrongful Death Cases that allegedly "arose" prior to the Nursing Home Chain sale on July 29, 2015. *See* Complaint, ¶ 33.

[89] *See* Response, at p.8.

Counts II and III, the Trustee does not directly address the argument in either his Response or Brief.

69.     To frame the issue, in relation to Count II, the Trustee specifically alleges that the transfers at issue "were made while the Debtor was insolvent, or the transfers themselves made the Debtor insolvent."[90]  In addition, paragraph 47 of the Complaint (part of Count II) incorporates by reference each of the previously asserted factual allegations of the Complaint, which include allegations with respect to the establishment of inflated rates under the Specialty Select Agreements designed to cause the Debtor to have minimal profitability and cash reserves as the Contractual Payments were made[91] and the allegation that on the date of the bankruptcy filing, following the sale of the Debtor's assets and disbursement of the Sales Proceeds, the Debtor had only $28,727.05 in the bank to satisfy all allowed claims, including the allowed amount of the asserted $2.5 million plus in Resident Injury Case claims.[92]  In relation to Count III, while no allegations of insolvency or undercapitalization are expressly made within the paragraphs of such Count, paragraph 55 of the Complaint (part of Count III) incorporates by reference each of the previously asserted factual allegations.[93]  As such, all of the above-referenced allegations with respect to Count II are equally applicable to Count III.  Finally, in relation to Count IV, which seeks the avoidance of the Specified Douglas Transfer as a preferential transfer, the Trustee specifically alleges that the transfer was made "while the Debtor was insolvent."[94]  Additionally,

---

[90] Complaint, ¶ 51.

[91] *See* Complaint, ¶¶ 24 and 26.

[92] *See* Complaint, ¶ 32.

[93] *See* Complaint, ¶ 55.

[94] Complaint, ¶ 67.

paragraph 65 of the Complaint (part of Count IV) also incorporates by reference each of the previously asserted factual allegations, including those applicable to Count II.[95]

70.     With this contextual background in place, the Defendants do not elaborate on the basis for their assertion that the Complaint fails to "substantiate" the insolvency-based allegations. Thus, while the Trustee may well not be able to carry his burden of proof (in whole or in part) with respect to the insolvency-based allegations at trial, from a pleading standpoint the Trustee has included sufficient insolvency-based allegations within the Complaint to avoid the dismissal of the Counts on this basis.

### 6.     *Additional Asserted Grounds for Dismissal of Preferential Transfer Claim*

71.     As indicated above, pursuant to Count IV of the Complaint, the Trustee seeks avoidance of the Specified Douglas Transfer as a preferential transfer under section 547 of the Bankruptcy Code.  Section 547 provides, in relevant part, that:

> [T]he trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property –
>
> (1)     to or for the benefit of a creditor;
>
> (2)     for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3)     made while the debtor was insolvent;
>
> (4)     made … between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5)     that enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of [the Bankruptcy Code].

---

[95] *See* Complaint, ¶ 63.

11 U.S.C. § 547(b). In relation to the above statutory requirements, the Defendants assert that Count IV must be dismissed because the Complaint fails to set forth "specific factual allegations" with respect to both the antecedent debt allegedly satisfied by the Specified Douglas Transfer and Douglas' alleged receipt of more than he would have received in the chapter 7 case if the transfer had not been made.

72. In response, while the Trustee adequately addresses the second alleged deficiency by highlighting the Complaint's allegations with respect to the unpaid Resident Injury Case claims and the inadequacy of the Debtor's financial resources to pay for all allowed claims in the Bankruptcy Case,[96] he wholly fails to address the first alleged deficiency. In regards to such alleged deficiency, pursuant to the Complaint, the Trustee baldly alleges that Douglas received the Specified Douglas Transfer from the Debtor "on account of an antecedent debt(s)."[97] No other allegations are included within Count IV with respect to such alleged debt(s) or its (their) nature, or to the existence of any agreement between Douglas and the Debtor pursuant to which a debt might have been owed by the Debtor to Douglas. Earlier in the Complaint, however, the Trustee does make reference to the Douglas Claim which, according to the Trustee, was asserted by Douglas on the basis of the Alleged Douglas Loan. Thus, ostensibly, the Specified Douglas Transfer may have been made on account of the outstanding balance owed by the Debtor to Douglas in relation to the Alleged Douglas Loan. But Count IV does not say as much and plausibility requires more than a mere speculative basis for recovery.[98]

---

[96] *See, e.g.*, Complaint, ¶ 32; *see also id*. ¶ 65 (incorporating by reference each of the previously asserted factual allegations).

[97] Complaint, ¶ 67.

[98] *Twombly*, 550 U.S. at 555.

73.     Consequently, Count IV is subject to dismissal based upon the failure of the Complaint to plausibly allege the factual basis for the existence of an antecedent debt owed by the Debtor to Douglas.  However, the Trustee will be granted leave to replead Count IV to supplement the factual basis for such allegation.

### 7.     *Asserted Grounds for Dismissal of Breach of Fiduciary Duty Claim*

74.     Count V of the Complaint sets out the Trustee's breach of fiduciary duty claim against Douglas.[99]  The elements of a claim for breach of fiduciary duty under Texas law[100] are: (1) the existence of a fiduciary duty; (2) breach of the duty; (3) causation; and (4) damages.[101]  In relation to such elements, the Defendants assert that Count V must be dismissed because the Complaint fails to allege any factual basis for the existence of a fiduciary duty owed to the Debtor, fails to adequately describe the actions allegedly taken in breach of any such duty, and fails to allege any damages caused by any such breach.

75.     In response to the first point, the Trustee emphasizes that "[i]t is without question that Texas corporate directors and officers owe fiduciary duties of obedience, loyalty and due care

---

[99] The first substantive paragraph of Count V of the Complaint parenthetically refers to "other individuals and entities" who allegedly "act[ed] in concert with [Douglas]" in "plundering" the Debtor's assets.  *See* Complaint, ¶ 71.  As a result, the Defendants have construed the Count as possibly asserting fiduciary duty claims against the "other individuals and entities" in addition to Douglas.  And because the Complaint does not identify any of the "other individuals and entities," the Defendants request dismissal of Count V to the extent that it purports to assert any fiduciary duty claims against any of the Defendants other than Douglas.  Having reviewed all of the allegations of Count V as well as the Trustee's Response and Brief, however, it is clear that the Trustee's breach of fiduciary duty claim is directed solely and exclusively against Douglas and not against any of the other Defendants (or any "other individuals and entities").  That said, predicated on Douglas' alleged breach of fiduciary duty, the Complaint also requests equitable relief in the form of disgorgement "from other Defendants who benefited at the expense of the Debtor."  *See* Complaint, ¶ 74.  The Trustee's request for such equitable relief is separately addressed herein.

[100] The Trustee asserts that Texas law governs with respect to both the alleged existence and breach of fiduciary duties in this case.  *See, e.g.,* Complaint, ¶ 70 (referring to the elements of a claim for breach of fiduciary duty under Texas law).  The Defendants do not dispute such contention.  Therefore, the Court will evaluate Count V under applicable Texas law.

[101] *See Life Partners Holdings*, 926 F.3d at 125; *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

to the corporation."[102]  While that is certainly true,[103] the Complaint is bereft of any assertion that the Debtor is a corporation (the Debtor appearing, instead, to be a limited liability company)[104] and that Douglas was either a director or officer of the Debtor.[105]  To state a plausible claim for breach of fiduciary duty, the Complaint must expressly identify the alleged basis for the existence of the particular fiduciary duty at issue.

76.     The Defendants additionally take issue with the adequacy of the Complaint's factual allegations with respect to the nature of the actions taken in breach of any alleged duties. For example, the Complaint baldly asserts that Douglas breached his duty of loyalty to the Debtor by "arrang[ing] contracts between the Debtor and affiliated companies which were heavily weighted in favor of the affiliated companies"[106] without identifying either the contracts at issue or the affiliates involved or in what way the contracts were "heavily weighted" in favor of the affiliates.  Similarly, the Complaint asserts that Douglas "caused the Debtor to enter into [a] contract for illusory liability insurance coverage"[107] without identifying the contract at issue or how or why it was illusory.  Additionally, the Complaint (a) asserts that Douglas breached his duty of care to the Debtor by causing the Debtor to "contract[ ] with the captive [insurance company Brae] to provide liability coverage which failed to cover known risks"[108] without explaining how

---

[102] *See* Trustee's Brief, ¶ 69.

[103] *See, e.g., Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir. 1984) (recognizing the existence of fiduciary duties of corporate officers and directors under Texas common law); *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex. 1963) (same).

[104] *See generally* Trustee's Appx. (compilation of sale-related agreements, each of which identify the Debtor as a Texas limited liability company).

[105] The agreements included within the parties' respective appendices appear, instead, to reflect that Douglas was the Manager of the Debtor.  *See, e.g.*, Defendants' Appx. 43 (copy of Specialty Select Lease that identifies Douglas as the Manager of the Debtor); Trustee's Appx. 37, 111, 130, 132 and 135 (Douglas' execution of agreements in connection with the sale of the Nursing Home Chain as Manager of the Debtor).

[106] *See* Complaint, ¶ 71.

[107] *See id*.

[108] *See* Complaint, ¶ 72.

or in what way Brae's coverage determinations were improper or inadequate, (b) asserts that Douglas "failed and neglected to perform his duties with due care and diligence"[109] without identifying the duties to which the Trustee is referring and in what way Douglas failed to exercise due care and diligence, and (c) asserts that Douglas "took actions and made decisions that were tainted with self-interest"[110] without identifying what actions and decisions to which the Trustee is referring and in what way they were self-interested.

77.     In response, the Trustee refers to earlier paragraphs of the Complaint in which allegations are made with respect to, among other things, Douglas' involvement in allegedly setting the above market rates of the Specialty Select Agreements and in causing the Contractual Payments to be made pursuant thereto, and with respect to his involvement in the alleged diversion of the Sales Proceeds and effort thereafter to cover it up with the Amended 2015 Return. If those are the allegations relied upon by the Trustee, however, then the Trustee must directly state as much as part of Count V in direct reference to the particular duty allegedly breached. It is not up to the Defendants to discern whether any particular vague, nondescript allegation of wrongdoing is really in reference to an earlier more detailed and definite allegation of the Complaint. Because the Complaint fails to adequately identify the particular grounds for the breaches alleged, the Complaint, as currently formulated, likewise fails to plausibly state a claim for breach of any duty that may have existed.

78.     Turning to the Defendants' attack of the sufficiency of the Trustee's damages allegations, while the Trustee largely fails to respond to such argument, a review of the Complaint reflects that Count V specifically refers to both the Sales Proceeds allegedly diverted away from

---

[109] *See id.*

[110] *See id.*

the Debtor and the assets of the Debtor allegedly depleted in defending against the Resident Injury

Cases.  If there are any other damages sought by the Trustee pursuant to Count V, they have not

been pled with the level of sufficiency necessary to both provide adequate notice to the Defendants

and state a plausible basis for their recovery.  Likewise, to the extent that exemplary damages are

sought pursuant to Count V (as opposed to Count VI), the Complaint fails to state any basis, much

less a plausible basis, for the recovery of such damages within Count V.

79.    Finally, with respect to the disgorgement relief sought, as to Douglas the Complaint

fails to specify the property sought to be disgorged.  And as to the unnamed "other Defendants

who benefitted at the expense of the Debtor," not only does the Complaint fail to specify the

property sought to be disgorged, but it also fails to identify against which Defendants such relief

is sought and on what basis.  Thus, as currently framed, the Complaint fails to plausibly state a

basis for any disgorgement relief.

80.    For all of the foregoing reasons, Count V of the Complaint, as currently pled, will

be dismissed for the failure to plausibly state a claim for relief.  However, the Trustee will be given

an opportunity to replead the Count to address the deficiencies noted.[111]

### 8.    *Asserted Grounds for Dismissal of Exemplary Damages Claim*

81.    Pursuant  to  Count  VI  of  the  Complaint,  which  is  titled  "Gross

Negligence/Exemplary Damages," the Trustee requests an award of exemplary damages against

---

[111] The Defendants also assert that the Complaint fails to "set forth specific allegations sufficient to rebut the presumption of the business judgment rule."  *See* Defendants' Brief, at p.20.  "The business judgment rule in Texas generally protects corporate officers and directors, who owe fiduciary duties to the corporation, from liability for acts that are within the honest exercise of their business judgment and discretion."  *Sneed v. Webre*, 465 S.W.3d 169, 173 (Tex. 2015).  In multiple places within Count V, however, the Trustee alleges facts challenging the honesty of any business judgment or discretion exercised by Douglas.  Thus, to the extent that the business judgment rule creates a presumption against liability, such allegations are sufficient to rebut the presumption, thereby placing the burden of proof back on Douglas.  Moreover, certain courts have treated the business judgment rule as an affirmative defense that must be pled in order for it to be considered.  *See, e.g., FDIC v. Niblo*, 821 F. Supp. 441, 458 (N.D. Tex. 1993) (describing the business judgment rule as an affirmative defense subject to the pleading requirements of Federal Rule 8(c)).

Douglas on the alleged basis that the "injuries to the Debtor resulted from Douglas' gross negligence and/or malice, including conscious-indifference malice."[112] While paragraph 75 of the Complaint (part of Count VI) incorporates by reference all previously asserted factual allegations of the Complaint, no other factual assertions are included within Count VI with respect to the particular "injuries" at issue or the actions of Douglas allegedly constituting "gross negligence and/or malice." Consequently, the Defendants argue that the Count must be dismissed.

82.    To frame the issue, while the Complaint does not say as much, it appears that the Trustee has predicted his request for relief in Count VI on chapter 41 of the Texas Civil Practice & Remedies Code (the "**TCPRC**") which, by its terms, "applies to any action in which a claimant seeks damages relating to a cause of action."[113] Section 41.003 of the TCPRC provides, in relevant part, that "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence."[114] Here, as indicated above, Count VI is focused on malice and/or gross negligence.

83.    For purposes of the TCPRC, "malice" is defined as "a specific intent by the defendant to cause substantial injury or harm to the claimant."[115] "Gross negligence" is defined in the TCPRC as "an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the

---

[112] *See* Complaint, ¶ 76.

[113] Tex. Civ. Prac. & Rem. Code § 41.002(a).

[114] *Id*. § 41.003(a); *see also Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 735 (N.D. Tex. 2011) ("Exemplary damages are authorized under the Texas Civil Practice and Remed[ies] Code when the claimant proves by clear and convincing evidence that the harm [with respect to which the claimant seeks recovery] results from fraud, malice or gross negligence") (quoting *Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 373 (Tex. 2004) (citing TCPRC § 41.003(a))).

[115] Tex. Civ. Prac. & Rem. Code § 41.001(7).

probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others."[116]

84.     With the foregoing in mind, the Trustee argues that Count VI is sufficiently pled based upon the same factual allegations of the Complaint highlighted by the Trustee in reference to Count V – namely, the earlier paragraphs of the Complaint in which allegations are made with respect to, among other things, Douglas' involvement in allegedly setting the above market rates of the Specialty Select Agreements and in causing the Contractual Payments to be made pursuant thereto, and with respect to his involvement in the alleged diversion of Sales Proceeds and effort thereafter to cover it up with the Amended 2015 Return.  The Court disagrees.

85.     First, as previously discussed, if there are particular earlier allegations of the Complaint that the Trustee is relying upon to support Count VI, then the Trustee must directly state as much as part of Count VI.  Moreover, the Complaint must sufficiently identify the factual allegations relied upon for each alleged basis for the exemplary damage relief sought (*i.e.* in the case of malice, the intent to cause substantial injury or harm; and in the case of gross negligence, the extreme degree of risk of harm involved considering the probability/magnitude of potential harm to others, awareness of the risks, etc.).  It is not up to Douglas to guess which earlier allegations of the Complaint the Trustee is relying upon and for what proposition.

86.     Accordingly, Count VI of the Complaint, as currently pled, will be dismissed. However, the Trustee will be given an opportunity to replead the Count to address the deficiencies noted.

---

[116] *Id.* § 41.001(11).

### 9. *Asserted Grounds for Dismissal of Recharacterization Claim*

87.     Finally, pursuant to Count VIII of the Complaint, the Trustee seeks to have any allowable amount of the Douglas Claim recharacterized as a capital contribution instead of true indebtedness.  As this Court has previously recognized, "[r]echaracterization of debt as equity is appropriate where the circumstances show that a debt transaction was 'actually [an] equity contribution [ ] ab initio.'"[117]   Factors to consider in evaluating a recharacterization claim include:[118]

(1)     the names given to the instruments that purport to evidence the indebtedness;

(2)     the presence or absence of a fixed maturity date;

(3)     whether and to what extent there is a right to enforce payment of principal and interest;

(4)     whether a right to participate in management flowed from the transaction;

(5)     the status of the alleged indebtedness in relation or comparison to other outstanding ordinary course debt;

(6)     whether the debtor was inadequately or thinly capitalized at the time of the transaction;

(7)     the ability or inability of the debtor to obtain financing from independent outside lending sources;

(8)     whether any identity of interest exists between the alleged creditor and the debtor's equity holders;

(9)     the source of funding for interest payments on the alleged indebtedness;

(10)    the extent to which the funds advanced were used to acquire capital assets; and

(11)    the failure of the debtor to repay the debt when due or to request a postponement of maturity.

---

[117] *In re Estill Med. Techs., Inc.*, Case No. 01-48064-DML-11, 2003 WL 27356581, at *3 (Bankr. N.D. Tex. Sept. 12, 2003) (quoting *In re Cold Harbor Assocs.*, 204 B.R. 904, 915 (Bankr. E.D. Va. 1997)), *aff'd*, 2004 WL 1773436 (N.D. Tex. 2004).

[118] *See id.* at *3-*4; *Farr v. Phase-I Molecular Toxicology, Inc. (In re Phase-I Molecular Toxicology, Inc.)*, 287 B.R. 571, 576 (Bankr. D.N.M. 2002).

With the foregoing in mind, the Trustee alleges in the Complaint that recharacterization is warranted because the Alleged Douglas Loan had no fixed maturity date, there was no promissory note or other instrument evidencing the Debtor's agreement to repay Douglas, there was no agreed upon interest rate, the Debtor was thinly capitalized with insufficient assets to both defend against the Resident Injury Cases and satisfy any resulting judgments, the Debtor's ability to obtain a loan from an independent outside lending source was "virtually nonexistent," and the Debtor failed over an extended period of time to pay off the Alleged Douglas Loan or make other payment arrangements.[119]

88.     The Defendants argue that the Complaint fails to "specifically identify" the factual bases for the claim, focusing, in particular, on the Debtor's alleged thin capitalization, inability to obtain a loan from an independent outside lending source, and inability to pay off the Alleged Douglas Loan or make other payment arrangements.  The Court disagrees.  In the case of Count VIII, the Trustee has adequately identified each of the factual bases upon which he is relying to pursue recharacterization, which factual bases the Court must accept as true for purposes of considering dismissal.  Douglas will have the opportunity to explore and test such asserted factual bases in greater depth during discovery.  At this stage, however, the Trustee has sufficiently pled a plausible case for recharacterization.

## CONCLUSION

For all of the foregoing reasons, the Court will dismiss each of the Counts of the Complaint with the exception of Counts VII and VIII, but subject to the right of the Trustee to further amend the Complaint to replead such Counts in accordance with the parameters outlined above, provided that (a) Count II and III (as to constructive fraud only) will be dismissed with prejudice to the

---

[119] *See* Complaint, ¶¶ 87-89.

extent that said Counts seek the avoidance and recovery of any Contractual Payments, and (b) Counts I, II and III will be dismissed with prejudice to the extent that said Counts seek the avoidance and recovery of any transfer other than those involving the Contractual Payments, the Sales Proceeds, the Douglas Transfers, and the Specified Douglas Enterprises Transfer.

**ORDER**

Accordingly, it is hereby:

**ORDERED, ADJUDGED AND DECREED** that the Motion be and is hereby GRANTED IN PART, AND DENIED IN PART, as follows:

1.      Counts II and III (as to constructive fraud only) of the Complaint are hereby dismissed with prejudice to the extent that they seek the avoidance and recovery of any Contractual Payments.

2.      Counts I, II and III of the Complaint are hereby dismissed with prejudice to the extent that they seek the avoidance and recovery of any transfer other than those involving the Contractual Payments, Sales Proceeds, Douglas Transfers, and the Specified Douglas Enterprises Transfer.

3.      Subject to the provisions of paragraph 1 and 2 above, each of the Counts of the Complaint with the exception of Counts VII and VIII is hereby dismissed with prejudice, but only if and to the extent that the Trustee does not replead such Count by the Repleading Deadline (defined below).

4.      The Trustee is hereby granted leave through and including twenty-one (21) days of the date of entry of this Memorandum Opinion and Order (the "**Repleading Deadline**") to file a further amended Complaint to replead one or more of the Counts of the Complaint in accordance with the parameters set forth in this Memorandum Opinion and Order.

5.      Any relief requested in the Motion that is not expressly provided above is hereby denied.

### END OF MEMORANDUM OPINION AND ORDER   ###